UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHAL A. MARTIN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>GREG WHEELER,<br><br>　　　　　Defendant. | CASE NO. C19-6002 BHS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION |

This matter comes before the Court on Plaintiff Chal Martin's ("Martin") motion for partial summary judgment, Dkt. 9, and Defendant Greg Wheeler's ("Wheeler") cross-motion for summary judgment, Dkt. 11. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies Martin's motion and grants in part and denies in part Wheeler's motion for the reasons stated herein.

### I. PROCEDURAL HISTORY

On October 21, 2019, Martin filed this action against Wheeler alleging that he was improperly deprived of his property interest in severance pay to be provided upon his termination with the City of Bremerton. Dkt. 1. He brings claims against Wheeler for

ORDER - 1

violations of 42 U.S.C. § 1983 for failure to provide proper procedural due process and for violations of RCW 49.52.050 and RCW 49.52.070 for willful withholding of wages in connection with his termination from the City of Bremerton. *Id.*

On May 21, 2020, Martin filed for partial summary judgment on his § 1983 claim. Dkt. 9. On June 8, 2020, Wheeler responded. Dkt. 14. On June 12, 2020, Martin replied. Dkt. 17.

On June 4, 2020, Wheeler filed his cross-motion for summary judgment. Dkt. 11. On June 22, 2020, Martin responded. Dkt. 18. On June 26, 2020, Wheeler replied. Dkt. 20.

## II.  FACTUAL BACKGROUND

In May 2012, Martin was appointed as the Director of Public Works and Utilities ("Director") for the City of Bremerton ("City"). Dkt. 10, ¶ 2. As Director, Martin reported directly to the Mayor of Bremerton and supervised a department with eight divisions and 135 employees. Dkt. 12, ¶ 4. The Director oversees the City's the water, wastewater, engineering, operations/streets, administration, forestry, utilities/facilities, and equipment services departments. *Id.* Wheeler assumed office as Mayor of Bremerton and as Martin's direct supervisor in January 2018. *Id.* ¶ 2.

In late 2018, the City hired Greg Wilson ("Wilson"), Director of Investigations at PST Investigations, to conduct an investigation into alleged misconduct by a City employee, James Iovinelli ("Iovinelli"). Dkt. 10, ¶ 3. Iovinelli was an employee of the streets division and who was under Martin's supervision. Dkt. 16, ¶ 10. Wilson's investigation of Iovinelli focused on allegations of misconduct, including that Iovinelli

purchased two excavators—one for the City and one for himself—and that he was operating a personal cement business on City time. *Id.* ¶ 11.

On April 4, 2019, Wilson interviewed Martin as part of his investigation into Iovinelli. On April 19, 2019, Wilson submitted his report to the City ("Wilson report"). *Id.* at 53. The report generated by Wilson included a summary of evidence gathered during his investigation, interviews Wilson conducted, general observations by Wilson concerning the behavior and conduct of City employees, and conclusions about the allegations against Iovinelli. *Id.* at 53–120; *see also* Dkt. 10, ¶ 4. Wilson concluded in his report that Martin "demonstrated negligence and disconnect from what is occurring within his department." Dkt. 16 at 116.

Wheeler submits that, when he met with Wilson to discuss the findings of the Wilson report, Wilson revealed to him that there were problems in the streets department that went beyond Iovinelli's alleged misconduct. Wilson characterized Martin as a Director who "did not know, much less ensure compliance with, relevant policies in the department" and who "appeared ignorant, confused, or befuddled" as to issues. Dkt. 12, ¶ 6. Wheeler declares that several circumstances described in Wilson's report raised concern about Martin's fitness for his position. *Id.* ¶ 7. For example, Wilson's report stated that Martin admitted during his interview that he lacked familiarity with the City's procurement code as well as the City's disposal code. Dkt. 16 at 61–62. When he read the Wilson report, Wheeler declares that he concluded that Martin was unaware whether the policies were being followed and questioned whether Martin knew what the policies required. Dkt. 12, ¶ 7.

Wheeler also specifically points to an allegation about Martin in the Wilson report that brought him great concern. In his interview with Wilson, Martin recalled a time he was out for a jog and believed he saw a city vehicle doing concrete work on private property. Dkt. 16 at 63. Martin told Wilson that "[i]t made me wonder, but I never did follow up on that." *Id.* Wheeler declares that in light of the Wilson report he began to seriously consider whether to terminate Martin for cause. Dkt. 12, ¶ 7.

On April 22, 2019, Martin met with Wheeler and Charlotte Nelson ("Nelson"), the City's human resources manager. *Id.* ¶ 9. Wheeler and Nelson submit that Martin was provided with a notice of proposed discipline—informing Martin that Wheeler was considering terminating him for cause—and was given the opportunity to review a highlighted version the Wilson report. *Id.* ¶¶ 9–10; Dkt. 16, ¶ 14. Wheeler and Nelson also declare that they gave Martin as much time as he wanted to review the highlighted report and that they left him alone in a conference room to review the report. Dkt. 12, ¶ 10; Dkt. 16, ¶ 14. Martin, on the other hand, contends that he reviewed the highlighted report for approximately eight to ten minutes, and then the report was taken from him. Dkt. 10, ¶ 8. Martin declares that after reviewing the highlighted materials he did not gather what he was being accused of doing and that it was not clear what specific charges were being brought against him. *Id.* ¶ 9. Wheeler submits that Martin commented that the Wilson report made him look "really bad." Dkt. 12, ¶ 10; Dkt. 16, ¶ 14.

At the conclusion of the April 22 meeting, Wheeler gave Martin a "Notice of Proposed Discipline – Pre-Disciplinary Hearing" ("Notice"). Dkt. 12, ¶ 9; *see also* Dkt. 16 at 123–25. The Notice confirmed that Wheeler was considering terminating Martin for

cause and informed Martin that there would be a pre-disciplinary hearing on April 29, 2019. Dkt. 16 at 123. In addition to the Notice, Martin also received a copy of the Wilson report, though Martin contends that he was given an unhighlighted version of the report. Dkt. 10, ¶ 10. Martin was then placed on administrative leave from April 22 through April 29. Dkt. 12, ¶ 10. Wheeler declares that he does not remember hearing from Martin in the week leading up to the April 29 pre-disciplinary hearing. *Id.* ¶ 11.

On April 29, 2019, Martin's pre-disciplinary hearing was held with Martin, Nelson, and Wheeler in attendance. *Id.* ¶ 12. At the hearing, Martin submitted a letter stating that Wheeler failed to provide meaningful notice of any charges against him and that the proposed termination constituted a deprivation of due process. Dkt. 10, ¶ 11; *see also* Dkt. 10-10. After Martin presented his letter, the pre-disciplinary hearing ended. *See* Dkt. 16 at 140–41.

On April 30, 2019, Wheeler advised Martin that he was being terminated from the City with cause and therefore would not be paid a severance. Dkt. 10-11. In a Notice of Termination, Wheeler stated that the Wilson report "led to [a] tentative assessment that [Martin] had willfully abdicated [his] responsibilities as the City's Public Works Director." Dkt. 16 at 140. Wheeler concluded that Martin had "turned a blind eye to malfeasance and nonfeasance occurring in [his] department for some time." *Id.* As such, Martin was terminated from his position with the City effective April 30, 2019 for cause and was not paid a severance.

## III. DISCUSSION

Martin moves for partial summary judgment on the issue of whether Wheeler violated 42 U.S.C. § 1983 by failing to provide him proper procedural due process. Dkt. 9. Wheeler moves for summary judgment on all of Martin's claims, arguing that Martin received adequate procedural due process, that Martin's claims are barred by qualified immunity, that there was just cause for Martin's termination, and that there was a bona fide dispute as to whether Martin's severance was owed. Dkt. 11.

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

1       The determination of the existence of a material fact is often a close question. The
2 Court must consider the substantive evidentiary burden that the nonmoving party must
3 meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477
4 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual
5 issues of controversy in favor of the nonmoving party only when the facts specifically
6 attested by that party contradict facts specifically attested by the moving party. The
7 nonmoving party may not merely state that it will discredit the moving party's evidence
8 at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*
9 *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,
10 nonspecific statements in affidavits are not sufficient, and missing facts will not be
11 presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

12 **B.**     **Section 1983**

13       Wheeler asserts that he is shielded by qualified immunity for Martin's § 1983
14 claim. Defendants in a § 1983 action enjoy qualified immunity from damages for civil
15 liability as long as their conduct does not violate clearly established statutory or
16 constitutional rights of which a reasonable person would have known. *Harlow v.*
17 *Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity defense, the
18 Court must determine: (1) whether a constitutional right would have been violated on the
19 facts alleged, taken in the light most favorable to the party asserting the injury; and (2)
20 whether the right was clearly established when viewed in the specific context of the case.
21 *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in
22 determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. In analyzing a qualified immunity defense, courts are "permitted to exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 55 U.S. 223, 236 (2009). The Court will therefore first determine whether Martin's constitutional right was clearly established under the relevant circumstances.

"[T]he law regarding procedural due process claims can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." *Brewster v. Bd. Of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998) (internal quotation marks omitted). "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 984. In the context of a pre-termination hearing, the public employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Martin has not presented any closely corresponding factual and legal precedent to the circumstances here. He provides the Court two analogous cases: *Brouillette v. Bd. of Dirs. of Merged Area IX*, 519 F.2d 126 (8th Cir. 1975), and *Matthews v. Harney Cty., Oregon, Sch. Dist. No. 4*, 819 F.2d 889 (9th Cir. 1987). Martin's reliance on *Brouillette* is misplaced; in *Brouillette,* the Eighth Circuit found that the non-tenured teacher plaintiff was not entitled to the protections of procedural due process guaranteed by the

Constitution because the plaintiff did not have a liberty interest in his employment. 519 F.2d at 128. Turning to local state law, the Eighth Circuit then analyzed whether the state statute that provided non-tenured teachers with procedural due process was violated. *Id.* at 128. The Eighth Circuit laid out the four factors of "minimal requirements of due process." *Id.* While the Eighth Circuit provided basic guidelines as to the general requirements of due process, these factors are different than the procedural due process required for a *Loudermill* hearing and seem to apply only for Iowa's state law due process requirements. Here, Martin is bringing a claim of violation of due process under the United States Constitution, not a violation of local state due process law. Consequently, the factors found in *Brouillette* do not apply to this case.

Martin also relies on *Matthews* for the proposition that "explicit written or oral notice, including detailed and comprehensive allegations of wrongdoing, in advance of the informal hearing or hearings" is required for sufficient notice under *Loudermill*. *Matthews*, 819 F.2d at 894. However, Martin takes this notion out of context; the Ninth Circuit was discussing whether informal hearings can be constitutionally sufficient under *Loudermill*, citing to cases where informal hearings were sufficient because the employee had received explicit notice. *Id.* The Ninth Circuit did not establish a general rule that an employee must receive "detailed and comprehensive allegations" in order to satisfy *Loudermill*.

Moreover, the facts in *Matthews* are distinguishable from the facts here. in *Matthews*, the plaintiff school teacher attempted to cover up an incident where two students approached her regarding the possibility that they had illegal pills in their

possession. 819 F.2d at 890. Although the students initially consented to the cover up, they returned to the teacher and stated that they were going to inform the superintendent about the pills. *Id.* The teacher then flushed two of the three pills down the toilet and escorted the students to the superintendent with the remaining pill. *Id.* Two days later, the superintendent called the teacher into his office and informed her that her actions would come before the school board at the next hearing, which had the authority to terminate the teacher. *Id.* Approximately two weeks later at the next scheduled board meeting, the board interviewed the teacher and the students. *Id.* at 891. The next day, without notice or an opportunity to be heard, the board presented the teacher with the opportunity to resign or be fired. *Id.* Although the teacher resigned, the next day she withdrew her resignation. *Id.* The board then directed her to appear at a meeting one week later. *Id.* At the beginning of the meeting, the board met without the teacher present and voted to terminate her employment. *Id.* When they invited her into the meeting, they informed her of their decision. *Id.* Under these facts, the Ninth Circuit held that a reasonable jury could conclude that the teacher was not provided notice and an opportunity to be heard at either meeting of the board. *Id.* at 893. The first meeting did not satisfy due process because the teacher "was asked to resign before she was ever aware that her job was in jeopardy." *Id.* The second meeting did not satisfy due process because the teacher "was called into the meeting only after the board had already voted in favor of dismissal." *Id.*

In this case, Martin has fails to show that Wheeler violated law that was clearly established in *Matthews*. Unlike the employee in *Matthews*, Wheeler gave Martin the investigative report and written notice of the potential for termination prior to the hearing.

1 Although the parties dispute the length of time that Martin was allowed to read and
2 review the report, neither *Matthews* nor any other authority provided to the Court
3 establishes that Wheeler violated Martin's constitutional right to notice accepting
4 Martin's assertion that he was only allowed to look at the report for 8 to 10 minutes. In
5 other words, Martin has failed to cite or provide any authority establishing his alleged
6 right to either a detailed summary of the charges against him or a right to a highlighted
7 copy of the investigative report prior to the disciplinary hearing. In fact, Martin does not
8 allege that he requested a copy of the report, which means that to overcome Wheeler's
9 assertion of qualified immunity Martin must provide some authority to establish that
10 Wheeler was required to sua sponte provide a copy of the report before the hearing. *City
11 of Escondido, Cal. v. Emmons*, ––– U.S. –––, 139 S. Ct. 500, 503 (2019) ("the clearly
12 established right must be defined with specificity."). Martin has failed to cite, and the
13 Court is unaware of, any authority establishing his alleged constitutional right. Therefore,
14 the Court denies Martin's motion for partial summary judgment and grants Wheeler's
15 motion for summary judgment as to the § 1983 claim because Wheeler is entitled to
16 qualified immunity.

17 **C.  Willful Withholding of Wages**

18 Martin's second cause of action alleges violations of RCW Chapter 49.52, which
19 imposes liability onto an employer for the willful withholding of an employee's wages.
20 *See* RCW 49.52.070. Under Washington law, wage is defined as compensation due to an
21 employee by reason of employment. *See Bates v. Cty. of Richland*, 112 Wn. App. 919,
22 939 (applying the definition found in RCW 49.46.010(2)) (internal citation omitted). And

1  Washington courts have found that severance constitutes wages because the
2  compensation "derives solely from [an] employment contract[.]" *Dice v. Cty. of*
3  *Montesano*, 131 Wn. App. 675, 689 (2006). Here, Martin alleges that Wheeler willfully
4  withheld his severance when Wheeler terminated him, arguing that he was dismissed
5  without cause and was therefore entitled to his severance. Wheeler argues that Martin
6  was terminated for cause and that he is thusly entitled to summary judgment on this issue.

7  Washington law defines "just cause" as a "fair and honest cause or reason,
8  regulated by good faith on the part of the party exercising the power;" and dismissal for
9  "just cause" is "one which is not for any arbitrary, capricious, or illegal reason and which
10 is based on facts (1) supported by substantial evidence and (2) reasonably believed by the
11 employer to be true." *Baldwin v. Sisters of Providence in Washington, Inc.*, 112 Wn.2d
12 127, 139 (1989). Accordingly, "whether an employer properly determined it had just
13 cause for termination is a question for the trier of fact." *Lund v. Grant County Public*
14 *Hosp. Dist. No. 2* 85 Wn. App. 223, 228 (1997). Wheeler argues that "the record is
15 replete with evidence supporting [Martin's] termination for cause," Dkt. 11 at 17, and
16 that reasonable minds could only reach the conclusion that Wheeler had just cause to
17 terminate Martin, *id.* at 19. Martin, on the other hand, asserts that there is a dispute of
18 material facts about whether Wheeler had cause. For example, he argues that he never
19 admitted that he lacked familiarity with the City's code provisions and that Wheeler's
20 conclusions amounted to a subjective evaluation rather than an opinion supported by
21 substantial evidence. *See* Dkt. 18 at 7–9. The Court agrees with Martin that questions of
22

1 fact remain for trial. Therefore, the Court denies Wheeler's motion on this issue because
2 there are disputed material facts as to whether Wheeler had cause to terminate Martin.
3       Similarly, issues of material fact exist as to whether there was a bona fide dispute
4 over Martin's severance. Under RCW 49.52.070, a party is entitled to double damages if
5 the withholding of wages is found to be willful. Withholding of wages is not willful,
6 however, where there is a bona fide dispute as to whether the wages are owed. *Schilling*
7 *v. Radio Holdings, Inc.*, 136 Wn. 2d 152, 160 (1998). A bona fide dispute exists when
8 there is a "'fairly debatable' dispute over whether an employment relationship exists, or
9 whether all or a portion of the wages must be paid." *Id.* at 161 (internal citations omitted).
10 Wheeler argues that his decision not to pay Martin severance is not willful as a matter of
11 law because there was a bona fide dispute about whether it was owed. But Martin
12 correctly points out that whether an employer willfully withheld money owed is a
13 question of fact. *See Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 660 (1986). Martin
14 argues that the facts show that it was not debatable whether Martin was owed severance
15 and that Wheeler acted willfully in denying him the severance. The Court agrees that
16 material disputes of fact exist here as well, and therefore the Court denies Wheeler's
17 motion for summary judgment as to Martin's second cause of action.
18       Regarding trial, the Court does not know when civil jury trials will resume in this
19 district. Although the courthouse is currently scheduled to open October 5, 2020, jury
20 trials will not begin at that time and, when jury trials do begin, the Court has numerous
21 criminal trials that must be held before civil trials. The Court must balance "judicial
22 economy, convenience, fairness, and comity" in considering whether to assert pendant

jurisdiction over state law claims after dismissing all federal claims. *Notrica v. Bd. of Sup'rs of Cty. of San Diego*, 925 F.2d 1211, 1214 (9th Cir. 1991). Accordingly, the Court concludes that judicial efficiency and the interests of justice, as well as the parties, are best served by the Court declining to exercise supplemental jurisdiction over the state law willful withholding of wages claim alleged against Wheeler and dismissing this action.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Martin's motion for partial summary judgment, Dkt. 9, is **DENIED,** that Wheeler's motion for summary judgment, Dkt. 11, is **GRANTED** in part and **DENIED** in part, and this action is **DISMISSED**.

Dated this 15th day of September, 2020.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge